# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS H. KANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | No. 13 C 8053 |
| BANK OF AMERICA, NATIONAL | ) | |
| ASSOCIATION, and | ) | Judge George M. Marovich |
| WELLS FARGO BANK, N.A. | ) | |
| d/b/a WELLS FARGO HOME | ) | |
| MORTGAGE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas H. Kane ("Kane") has filed a 187-paged, seventeen-count complaint containing more than 1000 numbered paragraphs against defendants Bank of America, National Association ("Bank of America") and Wells Fargo Bank, NA d/b/a Wells Fargo Home Mortgage ("Wells Fargo").  Kane, whose claims arise out of a mortgage he could not pay, asserts claims under the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Practices Act and the Illinois Consumer Fraud Act, as well as claims for fraud, conspiracy and breach of contract.[1]  Defendants have moved to dismiss.  For the reasons set forth below, the Court grants in part and denies in part defendants' motion to dismiss.

---

[1]The Court has federal-question jurisdiction over this case, but it also has diversity jurisdiction.  Plaintiff is a citizen of Illinois; Wells Fargo is a citizen of Delaware and California; and Bank of America is a citizen of Delaware and North Carolina.  The amount in controversy is greater than $75,000.00.

# I.  **Background**

The Court takes as true the allegations in plaintiff's complaint.  The Court also considers the documents attached to plaintiff's complaint.  Fed.R.Civ.P. 10(c).

In June 2006, when he was 70 or 71 years of age, plaintiff Kane took out a 30-year mortgage in the amount of $470,000.00.  Wells Fargo originated and serviced the mortgage, and Bank of America eventually purchased the note.  The reason Kane took out the mortgage was to pay his ex-wife for her share of their home, which was recently appraised at $910,000.00.  (Complt. ¶ 77).  Things went fine with the mortgage until Kane was laid off from his job as an architect on February 4, 2009.

The next day, on February 5, 2009, Kane telephoned Wells Fargo to request loan counseling and modification.  Thus began a series of communications between Wells Fargo and Kane.  Wells Fargo sent Kane at least fifty items interstate via U.S. Mail, United Parcel Service ("UPS") or Federal Express ("FedEx").  Wells Fargo made at least fifteen interstate telephone calls to Kane.  Kane asserts that many of these communications constituted mail or wire fraud and were part of a scheme to defraud him.  The scheme "was designed to keep Plaintiff in his home for as long as possible, while [defendants] simultaneously denied Plaintiff every loan modification for which Plaintiff applied.  In this way, Bank of America and Wells Fargo drove up their own fees while depleting Plaintiff's equity in his property."  (Complt. ¶ 118).  Specifically, Wells Fargo and Bank of America charged Kane more than $103,685.00 in fees and interest charges.  (Complt. ¶ 930).  As of the date Kane filed this complaint, he was stilling living at the home on which he took out the mortgage.

Defendants move to dismiss.

## II.    Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.  *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003).  Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice.  *Bell Atlantic*, 127 S.Ct. at 1964-1965.  "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'"  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).  To survive a motion to dismiss, a claim must be plausible.  *Iqbal*, 129 S.Ct. at 1950.  Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible."  *Bell Atlantic*, 127 S.Ct. at 1974.

Certain allegations must be stated with particularity.  For example, Federal Rule of Civil Procedure 9(b) mandates that all averments of fraud must be "state[d] with particularity."  Fed.R.Civ.P. 9(b).  This generally means that one must allege the "first paragraph of any

newspaper story," which is to say the who, what, when, where and how. *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreen Co.*, 631 F.3d 436, 441-442 (7th Cir. 2011). The reason for the heightened pleading requirement with respect to fraud is "because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Pirelli*, 631 F.3d at 442. As plaintiff points out in his brief, the rules about pleading fraud with particularly are occasionally relaxed where a plaintiff alleges some details of the fraud and also alleges that the missing details are in the hands of the defendant. *Pirelli*, 631 F.3d at 446. Of course, "flexibility in the face of information asymmetries should not be conflated with whistling past the rules of civil procedure." *Pirelli*, 631 F.3d at 446.

Flexibility with respect to the particularized pleading of fraud does not extend to flexibility in the pleading of all claims. Plaintiff takes this flexibility concept too far when he argues that he can get around all pleading requirements by alleging that information can be obtained in discovery. Plaintiff argues (repeatedly and seemingly whenever he has failed to allege an element of a claim) that his claims cannot be dismissed so long as he incants "information can only be obtained through discovery." The Court disagrees with plaintiff. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If a plaintiff's "complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." *Iqbal*, 556 U.S. at 686.

III.    **Discussion**

**A.      Plaintiff's FDCPA claims**

In Counts XV, XVI and XVII, plaintiff asserts that defendant Wells Fargo violated the Fair Debt Collection Practices Act ("FDCPA") in three ways.  Wells Fargo moves to dismiss all three counts on the grounds that it is not a "debt collector" for purposes of the FDCPA.

The Fair Debt Collection Practices Act imposes liability on "any debt collector who fails to comply with any provision of this subchapter with respect to any person."  15 U.S.C. § 1692k(a).  The FDCPA is not aimed at creditors, who, according to Congress, "generally are constrained by the desire to protect their good will when collecting past due accounts."  *Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2002).  Instead, the FDCPA is aimed at "debt collectors," a term which the FDCPA defines and from which it lists exclusions.  15 U.S.C. § 1692a(6).  "The term [debt collector] does not include . . . (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was originated by such person . . ."  15 U.S.C. § 1692a(6)(F)(iii).

Here, as defendant points out, plaintiff has included allegations in his complaint that Wells Fargo originated the mortgage loan to plaintiff.  (See Complt. ¶ 80; Complt. Exh. 11).  Accordingly, plaintiff has admitted facts that establish Wells Fargo is not a debt collector for purposes of the FDCPA and, therefore, cannot be held liable.

For these reasons, the Court grants defendants' motion to dismiss with respect to Counts XV, XVI and XVII.  The Court dismisses with prejudice Counts XV, XVI and XVII.


**B.      Plaintiff's RICO claims**

### 1.	RICO § 1962(a) claims

Next, Kane asserts that Wells Fargo and Bank of America violated RICO § 1962(a). Congress passed RICO to "eradicate organized, long-term criminal activity." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). The statute provides a civil cause of action for violations of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . "). Despite "widespread abuse" of civil RICO, RICO "has not federalized every state common-law cause of action available to remedy business deals gone sour." *Midwest Grinding*, 976 F.2d at 1025. "Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

In Counts V and XII, Kane asserts that Bank of America and Wells Fargo, respectively, violated 18 U.S.C. § 1962(a). That section provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). "This provision was primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering." *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3rd Cir. 1991).

### a.	Standing

Defendants first argue that Kane lacks standing to pursue a claim under § 1964(c) for a violation of § 1962(a).  Kane may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of her injury.  *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  With respect to claims under § 1962(a) (which, again, prohibits the investment of racketeering proceeds into the operation of an enterprise), "the majority of circuits hold that the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate."  *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 779 n. 6 (7th Cir. 1994).  Although the Seventh Circuit has not decided the issue (it merely stated the majority rule), this Court joins the courts in this district that have adopted the majority view.  *Starfish Investment Corp. v. Hansen*, 370 F. Supp.2d 759, 779 (N.D. Ill. 2005); *Early v. K-Tel Int'l, Inc.*, Case No. 97 C 2318, 1999 WL 181994 at *5 (N.D. Ill. March 24, 1999); *Palumbo v. I.M. Simon & Co.*, 701 F. Supp.2d 1407, 1411 (N.D. Ill. 1988).         Plaintiff, for his part, does not dispute the applicability of the majority rule, but he does seem to think he has adequately alleged that he was injured by the investment of racketeering income.  The Court disagrees.

With respect to Bank of America, plaintiff alleges that Bank of America charged plaintiff $103,685 in fees, which constitute "income acquired by Bank of America through its pattern of racketeering activity."  (Complt. ¶¶ 774-775).  Plaintiff further alleges that "[i]t is reasonable to infer that Bank of America used income derived from the interest and fees from Plaintiff's mortgage, acquired through its pattern of racketeering activity to operate itself or Bank of America's enterprise."  (Complt. ¶ 776).  The Court agrees with defendants that plaintiff has not adequately alleged that his injury was proximately caused by the investment of RICO proceeds.

First, it is not clear Bank of America received the funds in time to have used them to harm plaintiff. Plaintiff's alleged injury is the $103,685 of late fees he was charged, but that is also the alleged racketeering income. Plaintiff has not even alleged that he paid these fees yet. Often, such fees are paid only when a house is sold at foreclosure auction, which, as of the day the complaint was filed, had not occurred. It is logically impossible for plaintiff to have been injured by the investment of fees that had not yet been paid. Plaintiff has failed to allege that he was injured by Bank of America's investment of racketeering proceeds.

With respect to Wells Fargo, plaintiff alleges that it "is reasonable to infer" that Bank of America paid Wells Fargo to service plaintiff's mortgage and that these service fees constitute the income Wells Fargo received from a pattern of racketeering. (Complt. ¶ 925). Plaintiff further alleges that it "is reasonable to infer that at least some of the income earned . . . was invested into the operation of Wells Fargo." (Complt. ¶ 926). Nowhere, though, does plaintiff allege that the investment of the alleged racketeering income proximately caused his injury. His injury was the $103,265 in fees, but the proximate cause of that injury was plaintiff's failure to pay his mortgage. He could have cut off those fees at any time by selling his home (a fact which Wells Fargo told him several times in writing).

Plaintiff has failed to allege that he has standing to sue Wells Fargo or Bank of America for violation of RICO § 1962(a).

### b.       Pattern of racketeering activity

Defendants argue that plaintiff's RICO claims should be dismissed for the additional reason that plaintiff fails to allege specifically a pattern of racketeering activity. A "pattern of racketeering activity" is "at least two acts of racketeering activity, one of which occurred after

the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(f). Racketeering activity, in turn, includes a number of indictable offenses, including the oft-cited mail and wire fraud. 18 U.S.C. § 1961(a). Fraud, for purposes of mail or wire fraud, means "deliberate, material misrepresentations." *Perlman v. Zell*, 185 F.3d 850, 854 (7th Cir. 1999) (citing *Neder v. United States*, 527 U.S. 1 (1999)).

Defendants argue that plaintiff has not alleged a *single* misrepresentation in his more-than-one-thousand-paragraph complaint, because what he alleges either constitutes mere puffing or does not constitute a misstatement. Plaintiff, in response, argues that "[f]alse statements are identified in the Complaint." In her brief, plaintiff does not bother to cite a single one. Nonetheless, the Court has waded through plaintiff's voluminous complaint, searching for *potential* misrepresentations. They fall into several categories.

### *May have options*

In ¶ 122, plaintiff alleges that, on July 29, 2009, Wells Fargo wrote him a letter in which it stated, "We value you as a customer and have several options that may help you keep your home." Plaintiff asserts that this is a misrepresentation, because Wells Fargo had already denied plaintiff a loan modification. The Court agrees with defendants, however, that this is not a misrepresentation. In the letter, Wells Fargo says plaintiff "may" have "options," not that it *will* give plaintiff a *loan modification*.

In ¶ 145, plaintiff alleges that on August 20, 2009, Wells Fargo sent plaintiff a letter in which Wells Fargo stated:

> Once we receive the documents requested from you and begin processing your application, some of the options that may become available to you include:

> *Repayment Plan . . .
> *Loan Modification . . .
> *Short Sale--This option allows you to sell your home based on its current market value to avoid a potential foreclosure and the negative credit rating that is associated with this action.
> *Deed in Lieu of Foreclosure--This is another foreclosure avoidance program that allows you to convey (transfer) your interest in the property to the lender or to the loan investor.

(Complt. Exh. 22).  Plaintiff alleges that this is a misstatement, because Wells Fargo sent it after it had already denied plaintiff a loan modification.  (¶ 144).  The Court agrees with defendants that these statements do not constitute misrepresentations.  To begin with, Wells Fargo says plaintiff *may* qualify for these *options*, not that he *will* be granted a *loan modification*.  Furthermore, this letter belies plaintiff's entire theory of his RICO claim, which is that Wells Fargo wanted him to stay in his home so that he would accrue fees and Wells Fargo could rob him of his home equity.  In this letter, Wells Fargo gives plaintiff two options that would stop the fees and stop defendants from obtaining his equity in the form of late fees.  Specifically, Wells Fargo tells him about the option of a short sale and the option of conveying the deed to the home rather than waiting for a foreclosure.  Plaintiff has not alleged a misrepresentation here.  Plaintiff makes similar allegations in ¶¶ 330-331 and ¶¶ 386-387, and those paragraphs fail to allege misrepresentations for the same reasons.

### *Primary goal*

In ¶ 124, plaintiff alleges that in the July 29, 2009 letter, Wells Fargo stated, "Our primary goal is to help you continue to experience the pride of home ownership."  Plaintiff believes this is a misstatement.  The Court agrees with defendants that this is an expression of hope, which is inactionable puffing rather than actionable fraud.  *See Speakers of Sport, Inc. v. Proserv, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) ("The promise of endorsements was puffing not

in the most common sense of a cascade of extravagant adjectives but in the equally valid sense of a sales pitch that is intended, and that a reasonable person in the position of the 'promisee' would understand, to be aspirational rather than enforceable--an expression of hope rather than a commitment.").  The sentence is not a promise that plaintiff would receive a loan modification that would allow him to stay in his home.  It is not actionable as fraud.

Plaintiff makes similar allegations in ¶¶ 447-449.  For the same reasons, those paragraphs do not state mail fraud.

### *Every opportunity*

In ¶ 184, plaintiff alleges that on August 26, 2009, Wells Fargo sent him a letter in which it stated, "At Wells Fargo, our goal is simple.  We want you to have every opportunity to retain your home."  Plaintiff asserts that this is a misrepresentation, because Wells Fargo had already denied him a loan modification.  The Court agrees with defendants that this is not a material misrepresentation.  Wells Fargo is expressing a desire to give plaintiff an additional *opportunity* to apply for a loan modification; it is not promising that plaintiff *will* qualify for a loan modification.

### *We want to help*

In ¶ 253, plaintiff alleges that on August 27, 2010, Wells Fargo sent him a letter in which it stated, "As your mortgage servicer, we want to help you stay in your home."  The letter also said, "We want you to know there is a program available that may help you.  If you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure."  (Complt. Exh. 38).  Plaintiff asserts that this is a

misstatement, because Wells Fargo had already denied plaintiff a loan modification. Once again, Wells Fargo is expressing a desire to inform him about a program that *may* (not *will*) help him. This is not a material misstatement.

Plaintiff makes similar allegations in ¶¶ 420-424. For the same reasons, these allegations do not state a material misrepresentation.

### Denial based on wrong numbers

In ¶ 213, plaintiff alleges that on April 8, 2010, Wells Fargo sent him a letter in which it denied him a loan modification based on numbers that were inaccurate. The letter stated,

> You have not been approved for a mortgage loan modification because we were unable to get you to a modified payment amount that you could afford based on your monthly income of $3,680.69 and your monthly expenses of $7,458.52. At this point, we can only recommend the following options, and request you contact us to discuss them: Short sale -- Allows you to sell your home for less than the amount on your mortgage. Deed in lieu of foreclosure -- Transfers ownership of your home to Wells Fargo Home Mortgage if you cannot sell your home at market value.

(Complt. Exh. 36). Plaintiff alleges that these numbers are inaccurate, because he had told Wells Fargo on March 22 that he had monthly income of $5,176.50 and monthly expenses of $4,162.96 and had told Wells Fargo on March 31 that he had monthly income of $5,022.50 and monthly expenses of $3,998.00. Plaintiff alleges that he telephoned Wells Fargo, and an employee told him the numbers it used may have come from a credit report.

The Court concludes that the inaccurate numbers do not constitute a material misrepresentation. A misrepresentation is material if it is "relevant to the decision that the perpetrator of the fraud wants his intended victim to make." *United States v. Coffman*, 94 F.3d 330, 335 (7th Cir. 1996). The decision plaintiff alleges Wells Fargo wanted him to make was to stay in his house, so that he would continue to accrue late fees which would have the effect of

transferring his equity to Wells Fargo. The portion of the letter that is material to that decision is the fact that Wells Fargo is *denying* the loan modification. Whether Wells Fargo is denying it because his income is $4,000 per month or $5,000 per month is not relevant, so the mistake is not a material misrepresentation. In any case, this letter belies plaintiff's theory that Wells Fargo was trying to keep him in his home so that he would accrue more fees. This letter explicitly informs plaintiff that his options include a short sale or a deed in lieu of foreclosure, either one of which, had plaintiff chosen it, would have cut off the amount of fees he was accruing by not paying his mortgage.

### Denial for lack of information

In ¶ 277, plaintiff alleges that on August 23, 2010, Wells Fargo sent him a letter in which it informed plaintiff that he was being denied a loan modification, because he "did not provide [Wells Fargo] with the documents we requested." Plaintiff argues that this is a misstatement, because he had, in fact, provided the documents. Plaintiff, however, alleges in ¶ 270 that he had not provided pay stubs or a W-2, which Wells Fargo had requested. Accordingly, the Court agrees that plaintiff's own allegations show that this is not a misrepresentation.

Plaintiff makes similar allegations in ¶¶ 317 & 323 and ¶¶ 439-441. These are not material misrepresentations for the same reasons.

### Request for information

In ¶ 455, plaintiff alleges that a Wells Fargo employee sent him an undated letter, which plaintiff received on or about June 26, 2012. The letter states, among other things, "These are

the documents we need for modification review, each and every one of them . . ." Plaintiff alleges that this is a misstatement, because plaintiff had already been denied a loan modification. That Wells Fargo had already denied a loan modification sheds no light on whether the employee did or did not need certain listed documents to review a new request for modification. Plaintiff has not alleged a material misrepresentation.

In ¶¶ 463-465, plaintiff alleges that on June 29, 2012, a Wells Fargo employee named Ratindra Singh sent him a letter in which she stated, "As the first step in the mortgage assistance process, I'll need to receive specific documentation from you, which is why I'm writing you today. Working closely with you, I'll explore all the options available, taking your situation and financial circumstances into consideration." Plaintiff alleges that this is a misstatement, because Wells Fargo had already denied his request for a loan modification. In the letter, however, Singh never states that plaintiff *will* receive a loan modification, so this is not a misstatement.

### *We are evaluating your mortgage*

In ¶ 472, plaintiff alleges that on July 14, 2012, Singh wrote to plaintiff a letter in which Singh stated, "We are evaluating your mortgage for a modification. We want to help you stay in your home and are currently evaluating your mortgage for eligibility for the Home Affordable Modification Program ("HAMP), which would modify your loan terms and make your monthly payments more affordable." The letter goes on to say, "We have other options that may help you avoid foreclosure. If you are not approved for HAMP, or if you cannot afford to make your trial payments, or if you decide to leave your home, please contact us as soon as possible to explore other ways to avoid a foreclosure." (Complt. Exh. 75). Plaintiff alleges that this letter contains a misstatement, because Wells Fargo never intended to give plaintiff a HAMP modification. The

problem, once again, is that the letter does not tell plaintiff he *will* get a HAMP modification. It tells him Wells Fargo is *considering* him for a HAMP modification. The letter also tells plaintiff he has options other than foreclosure if he does not qualify for a HAMP modification. This letter does not constitute a misrepresentation.

The Court has waded through plaintiff's more-than-one-thousand-paragraph complaint and has not found a single material misrepresentation. Accordingly, plaintiff has failed to allege the requisite two incidents of mail or wire fraud, without which he cannot plead a pattern of racketeering activity. Plaintiff has failed to state a claim for a violation of RICO § 1962(a). Counts V and XII are dismissed without prejudice.

## 2. RICO § 1962(d) conspiracy claims

In Counts VI and XIII, respectively, plaintiff alleges that Bank of America and Wells Fargo conspired to violate RICO § 1962(a). Defendants move to dismiss.

To state a claim for conspiracy under RICO, one must plausibly allege, among other things, that the parties agreed that someone would commit at least two predicate acts. Plaintiff has not alleged two predicate acts and has not alleged an agreement to commit such predicate acts. Plaintiff's conspiracy claim fails. *See United Food and Comm. Workers Unions and Emp'r Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856-857 (7th Cir. 2013) ("Having failed to plead facts that would establish a violation of Section 1962(c), the Fund cannot state a claim for conspiracy under Section 1962(d) based on those same facts.") (citing *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) ("the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute.")).

Counts VI and XIII are dismissed without prejudice.

## C.    Kane's state-law claims

In his complaint, Kane also asserts several claims under state law.

### 1.    Kane's claims for common-law fraud and conspiracy

In Count I, Kane asserts that Bank of America engaged in common-law fraud. In Counts VII and VIII, Kane asserts that Wells Fargo engaged in common-law fraud. Defendants move to dismiss, arguing that Kane has not alleged a material misrepresentation and has not alleged detrimental reliance.

To state a claim for common-law fraud in Illinois, one must allege: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; (6) the reliance by the person to whom the statement was made led to that person's injury." *Siegel v. The Levy Org. Dev't Co., Inc.*, 153 Ill.2d 534, 542-543 (Ill. S.Ct. 1992).

The Court agrees that plaintiff has not stated a claim for fraud. As the Court explained above, plaintiff has failed to allege a material misstatement of fact. Thus, she has not alleged fraud. Counts I, VII and VIII are dismissed without prejudice.

In Counts II and IX, respectively, plaintiff asserts that Bank of America and Wells Fargo conspired to commit fraud. Defendants move to dismiss these claims on the grounds that plaintiff failed to state a claim for the underlying torts. The Court agrees. Under Illinois Law, "a conspiracy is not an independent tort." *Indeck North Am. Power Fund LP v. Norweb PLC*, 316

Ill.App.3d 416, 432 (Ill.App.Ct. 2000). "[T]he gist of a conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement." *Adcock v. Brakegate, Ltd*, 164 Ill.2d 54, 63 (Ill. S.Ct. 1995). Thus, where "a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Indeck*, 316 Ill.App.3d at 432. Because Kane has failed to state a claim for fraud, he also fails to state a claim for conspiracy to commit fraud. Counts II and IX are dismissed without prejudice.

### 2. Plaintiff's claims for Illinois Consumer Fraud

In Counts III and X, respectively, plaintiff asserts that Bank of America and Wells Fargo violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"). Plaintiff claims that defendants ran afoul of the ICFA when they violated HAMP guidelines.[2] Specifically, plaintiff claims that Bank of America violated HAMP guidelines by foreclosing while plaintiff was being considered for a Trial Period Plan ("TPP"). (Complt. ¶ 712). Plaintiff claims that Wells Fargo violated HAMP guidelines by denying plaintiff a permanent loan modification after plaintiff successfully completed a TPP; by referring plaintiff's loan for foreclosure before determining that he was ineligible for a loan modification; and by applying the wrong definition of "imminent default." (Complt. ¶¶ 212, 379-380, 488, 545).

Defendants argue that these claims should be dismissed. Defendants first argue that because HAMP lacks a private right of action (a legal proposition with which the Court agrees), a claim under the ICFA cannot be predicated on a violation of a HAMP guideline. The Court disagrees. *McGann v. PNC Bank NA*, Case No. 11-cv-6894, 2013 WL 1337204 at *10 (N.D. Ill.

---

[2]For a description of HAMP and its guidelines, *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-557 (7th Cir. 2012).

March 29, 2013); *Acevedo v. Citimortgage*, Case No. 11 C 4877, 2013 WL 1283807 at *4-5

(N.D. Ill. March 26, 2013); *see also Wigod v. Wells Fargo Bank NA*, 673 F.3d 547, 575 (7th Cir.

2012) (citing with approval *Boyd v. US Bank NA*, 787 F. Supp.2d 747, 752 (N.D. Ill. 2011) ("a

plaintiff may predicate an ICFA unfairness claim on violations of other statutes, like HAMP and

IHPA, that themselves do not allow for private enforcement.")).

Defendants also argue that plaintiff fails to state a plausible violation of a HAMP

guideline.[3]  The Court disagrees.  Defendants take issue with certain of plaintiff's HAMP

allegations, but defendants do not take issue with plaintiff's allegations that they foreclosed

prematurely in violation of HAMP guidelines.  Plaintiff alleges that the HAMP guidelines do not

allow foreclosure until after a number of steps (including considering the borrower for a HAMP

loan modification) are taken.  Plaintiff alleges that none of the steps were taken.  Specifically,

plaintiff alleges that Wells Fargo referred his loan for foreclosure by January 19, 2011.  (Complt.

¶ 376).  Plaintiff alleges that Bank of America filed a foreclosure action on March 24, 2011.

(Complt. ¶ 413).  Plaintiff also alleges that Wells Fargo was considering him for a HAMP loan

modification in July 2012.  (Complt. ¶ 472).  Thus, plaintiff has plausibly alleged that defendants

violated HAMP guidelines, thereby violating the ICFA.

The Court denies defendants' motion to dismiss Counts III and X.

In Counts IV and XI, plaintiff asserts that defendants conspired to violate the ICFA.

Defendants move to dismiss on the grounds that plaintiff has not alleged conspiracy plausibly.

The Court agrees.  The closest plaintiff comes to alleging conspiracy is to allege, "the agency

---

[3]Defendants do not argue that plaintiff fails to allege any of the other elements of a claim
under the Illinois Consumer Fraud and Deceptive Trade Practices Act.

relationship between Bank of America and Wells Fargo constitutes Bank of America's *agreement to act in combination with Wells Fargo* to violate the ICFA as described above." (Complt. ¶¶ 730 (emphasis in original); *see also* Complt ¶ 882). Such conclusory allegations of conspiracy do not suffice to state a claim. Counts IV and XI are dismissed without prejudice.

### 3. Kane's claim for breach of contract

In Count XIV, Kane asserts that Wells Fargo breached a term of the mortgage note. The mortgage note states, in relevant part, "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . ." (Complt. Exh. 11 ¶ 22 at p. 15). The acceleration right means that, "[i]f the default is not cured . . . Lender at its option may require immediate payment in full of all sums secured by this Security Instrument." (Complt. Exh. 11 ¶ 22 at p. 16). Plaintiff alleges that Wells Fargo breached this provision by refusing to accept plaintiff's mortgage payments before providing written notice of acceleration. Specifically, plaintiff alleges that Wells Fargo refused to accept a check from him and returned it with a note that said, "The check is being returned because it is less than the total amount due on the account." (Complt. ¶ 965).

Defendant moves to dismiss this claim for failure to state a claim for breach of contract. Defendant points out not only that refusing to accept payments does not trigger the notice requirement of the acceleration clause (Complt. Exh. 11 ¶ 22) but also that the note explicitly allows Wells Fargo to refuse payments. (Complt. Exh. 11 ¶ 1) ("Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."). Plaintiff did not respond to defendant's motion to dismiss this claim, and that is reason enough to dismiss it as waived. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039,

1043 (7th Cir. 1999) ("by failing to respond responsively to the motion to dismiss . . . she forfeited her right to continue litigating her claim.").  Furthermore, the Court agrees that what plaintiff alleges not only does not constitute a breach of the note but is explicitly allowed under the terms of the note.

Count XIV is dismissed with prejudice.

## IV.  <u>Conclusion</u>

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss.  Counts XIV, XV, XVI and XVII are dismissed with prejudice.

Counts I, II, IV, V, VI, VII, VIII, IX, XI, XII and XIII are dismissed without prejudice. Because many of the defects do not seem curable, plaintiff is not granted leave to amend.  If plaintiff wishes to amend any of the claims which the Court dismissed without prejudice, he will need to file a motion for leave to amend, along with a proposed amended complaint and a memorandum of law that explains how the proposed amended complaint cures the defects outlined in this decision.

This case is set for status on September 8, 2014 at 11:00 a.m.

ENTER:  M. Marovich

_____

George M. Marovich
United States District Judge

DATED:  August 25, 2014