**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS H. KANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | No. 13 C 8053 |
| BANK OF AMERICA, NATIONAL | ) | |
| ASSOCIATION, and | ) | Judge George M. Marovich |
| WELLS FARGO BANK, N.A. | ) | |
| d/b/a WELLS FARGO HOME | ) | |
| MORTGAGE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff's motion for leave to file an amended complaint. Plaintiff Thomas H. Kane ("Kane"), who took out a 30-year mortgage at the age of 70 or 71 and ran into trouble paying it when he was laid off from his job nearly three years later, seeks leave to file a 150-page proposed amended complaint containing 723 numbered paragraphs in which he asserts six counts against two proposed defendants. The proposed amended complaint is significantly shorter and more concise than Kane's original complaint, which asserted seventeen counts against defendants Bank of America NA ("Bank of America") and Wells Fargo NA d/b/a Wells Fargo Home Mortgage ("Wells Fargo").

On the defendants' motion to dismiss the original complaint, the Court dismissed fifteen of plaintiff's seventeen counts. The Court dismissed four counts (plaintiff's claims under the Fair Debt Collection Practice Act and his claim for breach of contract) with prejudice. The Court dismissed without prejudice for failure to state a claim plaintiff's fraud and RICO claims

(as well as related conspiracy claims), because plaintiff had failed to allege a single misrepresentation (despite seeming to have included in his complaint every communication between himself and defendants).

What survived the motion to dismiss (and remain pending) are two counts (Count III and Count X) in which plaintiff seeks to hold defendants Bank of America and Wells Fargo, respectively, liable under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA" or "Illinois Consumer Fraud Act") for their alleged violations of the Home Affordable Modification Program ("HAMP") guidelines. Although those are state-law claims, the Court has diversity jurisdiction over this case, because: (a) plaintiff is a citizen of Illinois; (b) Wells Fargo is a citizen of Delaware and California; (c) Bank of America is a citizen of Delaware and North Carolina; and (d) the amount in controversy is greater than $75,000.00.

Kane now seeks leave to file his proposed amended complaint. The biggest change in Kane's proposed amended complaint is that he wants to name different defendants. Instead of defendant Wells Fargo, plaintiff wants to name "Wells Fargo Home Mortgage, a division of Wells Fargo Bank NA" (the "Wells Fargo division"). Instead of Bank of America, plaintiff wants to name "Unknown Divisions within Bank of America, National Association" (the "Bank of America divisions"). Against the Wells Fargo division, plaintiff proposes to assert three counts: promissory fraud, a violation of the Illinois Consumer Fraud Act (the count that survived the first motion to dismiss) and a violation of RICO § 1962(c). Plaintiff would like to assert essentially the same claims against the Bank of America divisions. Defendants oppose the motion for leave to amend.

For the reasons set forth below, the Court denies plaintiff's motion for leave to file his proposed amended complaint. The Court will, however, grant plaintiff leave to file a second-amended complaint consistent with this opinion.

I.  **Background**

The Court takes as true (but does not vouch for) the allegations in plaintiff's complaint for purposes of considering whether to grant plaintiff leave to amend. The Court also considers the documents attached to plaintiff's proposed amended complaint. Fed.R.Civ.P. 10(c).

In June 2006, when he was 70 or 71 years of age, plaintiff Kane took out a 30-year mortgage in the amount of $470,000.00. Wells Fargo originated and serviced the mortgage, and Bank of America eventually purchased the note. The reason Kane took out the mortgage was to pay his ex-wife for her share of their home, which was recently appraised at $910,000.00. (Prop. Am. Complt. ¶ 92). Things went fine with the mortgage until Kane was laid off from his job as an architect on February 4, 2009.

In the meantime, Kane was not the only person in the country having trouble paying his mortgage. In 2008, Congress passed the Emergency Economic Stabilization Act of 2008, pursuant to which the Secretary of Treasury established the Home Affordable Modification Program ("HAMP"). (Prop. Am. Complt. ¶¶ 16, 19). The purpose of HAMP was to encourage banks to modify mortgage loans that were in default or in danger of default by paying banks $1,000.00 for each permanent loan modification a bank provided such a borrower. (Prop. Am. Complt. ¶¶ 16, 19, 21).

To participate in HAMP, a bank had to sign a Servicer Participation Agreement ("SPA") with Fannie Mae. (Prop. Am. Complt. ¶ 31). The SPA required the signing bank to abide by the

HAMP guidelines and any supplemental directives published by the Treasury Department. (Prop. Am. Complt. ¶¶ 34, 37). Wells Fargo signed an SPA, as did Bank of America. (Prop. Am. Complt. ¶ 32).

After Kane lost his job, he telephoned Wells Fargo to request loan counseling and modification. Thus began a series of communications (each of which is described in the proposed amended complaint) between Wells Fargo and Kane over the course of several years, during which time Kane applied for at least nine loan modifications but was never granted one. Kane asserts that many of these communications were part of a scheme to defraud him.

The basic scheme was to encourage Kane to stay in his home as long as possible, to increase the amount of fees he owed Wells Fargo and Bank of America. Kane describes this as a means of transferring the equity he had in his home from him to the banks. (Prop. Am. Complt. ¶¶ 124, 278). The banks encouraged plaintiff to stay in his home by repeatedly (and over the course of several years) encouraging him to apply for loan modifications. Plaintiff alleges that the banks never intended to give plaintiff a loan modification. Plaintiff alleges that when the banks encouraged him to apply for a loan modification, they promised him that they would evaluate his application according to the HAMP guidelines; but, the banks knew they would not actually follow the HAMP guidelines. (Prop. Am. Complt. ¶¶ 79-80, 82, 241-242, 391, 442-443). Plaintiff alleges that the reason the banks knew they would not follow the HAMP guidelines is that the HAMP guidelines violated Bank of America's investor guidelines. (Prop. Am. Complt. ¶ 82). Thus, each time Wells Fargo invited plaintiff to apply for a loan modification, it knew it would violate HAMP guidelines in order to comply with the investor

guidelines. (Prop. Am. Complt. ¶ 82, 391, 442-443). Plaintiff alleges he was denied at least one loan modification on account of "investor limitations." (Prop. Am. Complt. ¶ 428).

Over time, defendants charged plaintiff more than $100,000.00 in late fees and extra interest. Eventually, Bank of America filed a foreclosure action. It appears not to be resolved.

## II. Standard on a motion for leave to amend

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend should be "freely" given when "justice so requires." Fed.R.Civ.P. 15(a)(2). "District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgt. LLC*, 721 F.3d 865, 869 (7th Cir. 2013). To survive a motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950. Allegations that are as consistent with lawful conduct as they are with unlawful

conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

Certain allegations must be stated with particularity. For example, Federal Rule of Civil Procedure 9(b) mandates that all averments of fraud must be "state[d] with particularity." Fed.R.Civ.P. 9(b). This generally means that one must allege the "first paragraph of any newspaper story," which is to say the who, what, when, where and how. *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreen Co.*, 631 F.3d 436, 441-442 (7th Cir. 2011). The reason for the heightened pleading requirement with respect to fraud is "because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Pirelli*, 631 F.3d at 442.

## III. Discussion

### A. Plaintiff's proposed defendants are not suable entities

With his proposed amended complaint, plaintiff seeks to replace the current defendants with divisions within the defendant companies. As defendants point out, the proposed defendants, as unincorporated divisions within a company, are not suable entities and, therefore, cannot be substituted for the current defendants. *Spearing v. National Iron Co.*, 770 F.2d 87, 88-89 (7th Cir. 1985) ("National Iron Company . . . being an unincorporated division of Pettibone Corporation is not suable in its own right."); *see also Albers v. Church of the Nazarene*, 698 F.2d 852, 857 (7th Cir. 1983) ("An unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part."); *Reilly Partners v. Fair Isaac Corp.*, Case No. 09 CV 311, 2009 WL 1635538 at *2 (N.D. Ill. June 8, 2009).

Because plaintiff seeks leave to replace the current defendants with defendants that are not suable, the Court denies plaintiff's motion for leave to file the proposed amended complaint. The Court will, however, consider whether the new proposed claims, if lodged against the current defendants, would state a claim upon which relief may be granted.

### B. Plaintiff's promissory fraud claims

The Court dismissed the fraud claims in plaintiff's original complaint for failure to allege a misrepresentation. This time, plaintiff attempts to state a claim for promissory fraud.

Promissory fraud--misrepresentation of the intent to perform future conduct--is not actionable as fraud under Illinois law. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 168 (Ill. 1989). "Even a false promise of future conduct with no current intent to fulfil that promise will not constitute fraud." *Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 309 (1st Dist. 2002). Promissory fraud "is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992).

Illinois law recognizes an exception, however, such that a false promise of future performance is actionable if it "is part of a scheme or device to defraud another of her property." *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill.App.3d 795, 826 N.E.2d 970, 977 (1st Dist. 2005). The distinction sounds like one without a difference, but the Seventh Circuit has said its

> best interpretation is that promissory fraud is actionable only if either it is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy.

*J.H. Desnick, M.D. v. American Broadcasting Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995).

For example, in *Willis v. Atkins*, 412 Ill. 245, 259-260 (Ill. 1952), the Supreme Court of Illinois relied on actions beyond a promise of marriage without intent to perform in allowing a fraud claim. The court explained:

> We are aware of [the general rule that "actionable fraud cannot be predicated upon the mere failure to perform a promise, though there was no intention to perform the promise when made"] but believe it has no application to a situation such as that presented here, where the fraud was perpetrated and the confidence gained not by mere promises but by a course of conduct covering a period of almost twelve years in which appellee, by pretending great interest in the appellant's welfare and devotion to her affairs, secured not only her property but a large measure of his support. During all those years, he came to appellant's home almost daily, ate his meals with her and handled her business affairs. . . . The appellee, by all of his conduct, and not by mere promises, falsely represented that he and the appellant were building together for a rosy future, while all the time he was interested only in what he could get from her.

*Willis*, 412 Ill. at 259-260.

Although the allegations in this case do not approach the level of egregiousness described above, they are similar to allegations the Seventh Circuit found to be sufficient to state a claim for promissory fraud under Illinois law in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). In *Wigod*, the plaintiff alleged that defendant had offered her a Trial Period Plan ("TPP") and told her that if she complied with the payment plan (which required four modified payments), then she would be given a permanent loan modification. *Wigod*, 673 F.3d at 558. The plaintiff made the payments, but the defendant declined to give her a permanent modification, telling her it was "'unable to get you to a modified payment amount that you could afford per the investor guidelines on your mortgage.'" *Wigod*, 673 F.3d at 558. Wigod alleged a "systemic failure to offer permanent" loan modifications and that the systemic failure affected her and thousands of other people. The Seventh Circuit said "such a widespread pattern of

-8-

deception could reasonably be considered a scheme under Illinois law and thus actionable as promissory fraud." *Wigod*, 673 F.3d at 571.

Here, plaintiff alleges that defendants encouraged him repeatedly over the course of years to apply for loan modifications. Although they told him they would consider his application according to HAMP guidelines, the defendants knew they would not do so because the HAMP guidelines violated Bank of America's investor guidelines. Plaintiff alleges that the banks violated the HAMP guidelines and, ultimately, denied him at least one loan modification on the grounds of the investor guidelines. Plaintiff alleges that defendants did the same things to other borrowers. The Court concludes that the proposed allegations state a claim for promissory fraud.

Accordingly, the Court will allow plaintiff to file against the original defendants a second amended complaint that includes claims for promissory fraud.

### C. Plaintiff's RICO claims

In plaintiff's original complaint, he alleged that Bank of America and Wells Fargo violated 18 U.S.C. § 1962(a), a section of the Racketeer Influenced and Corrupt Organizations ("RICO") statute. That section provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in . . . the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). That section is "primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering." *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3rd Cir. 1991).

The Court dismissed plaintiff's § 1962(a) claim for several reasons. First, plaintiff did not have standing to sue under that section, because he did not allege that he was injured by the investment of racketeering proceeds. Second, plaintiff failed to allege a pattern of racketeering activity, because he failed to allege a single misrepresentation.

This time, plaintiff changes tack. He now agrees that § 1962(a) is not the appropriate section for this case and instead attempts to make out a claim under § 1962(c). That section provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In Count III of the proposed amended complaint, plaintiff alleges that the Wells Fargo division is a "person" for purposes of RICO, that Wells Fargo is an "enterprise," and that the Wells Fargo division "controls and conducts" Wells Fargo. (Prop. Am. Complt. ¶¶ 584, 590, 591). In Count VI, plaintiff alleges that the Bank of America divisions are "persons," that Bank of America is an "enterprise," and that the Bank of America divisions "control and conduct" Bank of America." (Prop. Am. Complt. ¶¶ 683, 686, 687).

The fundamental problem with these claims (as defendants point out) is that, for purposes of RICO § 1962(c), the person must be distinct from the enterprise. *Haroco v. American Nat'l Bank and Trust Co. of Chi.*, 747 F.2d 384, 400 (7th Cir. 1984) ("We are persuaded . . . that

section 1962(c) requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity. . . . [W]e focus our attention on the language in section 1962(c) requiring that the liable person be 'employed by or associated with any enterprise' which affects interstate or foreign commerce. The use of the terms 'employed by' and 'associated with' appears to contemplate a person distinct from the enterprise."); *see also Bucklew v. Hawkins, Ash, Baptie & Co, LLP*, 329 F.3d 923, 934 (7th Cir. 2003) ("A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act."). In this case, plaintiff alleges that unincorporated divisions of a corporation conducted the business of the corporation. Specifically, plaintiff alleges that the Wells Fargo division conducted and controlled Wells Fargo and that the Bank of America divisions conducted and controlled Bank of America. Unincorporated divisions, however, have no legal existence separate from the parent corporation. *Affymax v. Johnson & Johnson*, 420 F. Supp.2d 876, 879 (N.D. Ill. 2006) ("An unincorporated division like PRI, however, has no separate legal existence apart from its parent corporation."). Plaintiff has alleged that the person is the same as the enterprise, which does not suffice under RICO.

Plaintiff's RICO claims are not viable. Plaintiff is not granted leave to include them in a second amended complaint.

**IV.** **Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion for leave to file the proposed amended complaint.

Instead, the Court grants plaintiff leave to file a second-amended complaint against original defendants Wells Fargo NA and Bank of America NA and grants plaintiff leave to include claims for promissory fraud (i.e., Counts I and IV of the proposed amended complaint) and for violations of the Illinois Consumer Fraud Act (i.e., Counts III and X of the original complaint, Counts II and IV of the proposed amended complaint). Plaintiff is denied leave to include any claims under RICO.

Plaintiff's second-amended complaint is due July 15, 2015. Defendants' answers are due August 12, 2015.

ENTER:

/s/ George M. Marovich
George M. Marovich
United States District Judge

DATED: June 17, 2015