# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS H. KANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 13-cv-8053 |
| ) | |
| BANK OF AMERICA NATIONAL ) | Judge Gary Feinerman |
| ASSOCIATION; WELLS FARGO ) | Magistrate Judge Susan E. Cox |
| BANK, N.A., d/b/a Wells Fargo Home ) | |
| Mortgage, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

For the reasons discussed more fully below, Plaintiff's Motion to Compel [88] is denied.

## BACKGROUND

Plaintiff filed the operative complaint in this suit – a document that contained 187 pages, over 1,000 paragraphs, and 17 counts. Plaintiff alleges that he took out a mortgage in June 2006 in the amount of $470,000; Defendant Wells Fargo originated and serviced the mortgage, and Defendant Bank of America later purchased the note. (Dkt. 23 at 2.) Plaintiff was able to make payments on the note until he lost his job in February 2009. (*Id.*) Plaintiff contacted Wells Fargo and attempted to modify his loan to make it more affordable, given his new circumstances. Plaintiff's complaint claims that Defendants violated the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Practices Act, and the Illinois Consumer Fraud Act ("ICFA"), and had committed common law fraud, conspiracy, and breach of contract. (*Id.*) Judge Marovich issued a Memorandum Opinion and Order (Dkt. 23), dismissing all of Plaintiff's claims, except for this ICFA claims.

1

Plaintiff claims that the Defendants violated the ICFA by failing to adhere to the guidelines of the Home Affordable Care Program ("HAMP"), which are promulgated by the U.S. Department of the Treasury "to offer homeowners who are at risk of foreclosure reduced monthly mortgage payments that are affordable and sustainable over the long-term." (Dkt. 23 at 17; U.S. Department of the Treasury, *Making Home Affordable*, www.treasury.gov/initiatives/financial-stability/TARP-Programs/housing/mha/Pages/hamp.aspx (last visited June 10, 2016)). "Plaintiff claims that Wells Fargo violated HAMP guidelines by denying plaintiff a permanent loan modification after plaintiff successfully completed a TPP [Trial Period Plan]; by referring plaintiff's loan for foreclosure before determining that he was ineligible for a loan modification; and by applying the wrong definition of 'imminent default.'" (Dkt. 23.) Judge Marovich found that Plaintiff had adequately pled an ICFA violation by alleging that Defendants failed to adhere to HAMP guidelines when they referred Plaintiff's loan for foreclosure before determining whether Plaintiff was eligible for a HAMP loan modification. (Dkt. 23 at 18.) This is the only cause of action that is still extant in this case.

In March 2016, Plaintiff issued subpoenas on Defendants' attorneys for this case and the ongoing foreclosure action currently pending in state court. (Dkt. 88 at ¶ 3.) One of Defendants' attorneys produced a privilege log, which included communications that Defendants withheld or redacted based on the attorney-client privileged; according to Plaintiff, "every document or redaction listed in the Privilege Log pertains to communications pursuant to the Foreclosure Case." (Dkt. 88 at ¶ 6.) Plaintiff does not believe that these communications are protected by attorney-client privilege because they are covered by the "crime-fraud exception" to that privilege.

Plaintiff then filed a motion to compel compliance with the subpoenas. Judge Feinerman denied that motion without prejudice,[1] suggesting that, instead, Plaintiff should file a motion to compel production of the documents listed on Defendants' privilege log, and then re-issue subpoenas to Defendants' attorneys if Plaintiff won the motion to compel. (Dkt. 88 at ¶ 8.) Following Judge Feinerman's instructions, Plaintiff filed the instant motion to compel; Judge Feinerman set a briefing schedule, and referred the motion to this Court for disposition. (Dkt. 87, 92.)

## DISCUSSION

Plaintiff argues that this Court should grant his motion to compel because the documents he seeks fall within the crime-fraud exception to the attorney-client privilege. "The attorney-client privilege protects from discovery 'communications between attorney and client made for the purpose of obtaining legal advice,' even if those communications are relevant and would otherwise be discoverable." *Abbot Labs. v. Andrx Pharm. Inc.*, 241 F.R.D. 480, 486 (N.D. Ill. 2007) (quoting *In re EchoStar Commun. Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006)). However, the "crime-fraud exception provides that communications normally protected by the attorney-client privilege are not protected if they relate to communications made in furtherance of a crime or fraud." *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 535 (N.D. Ill. 2003). "The crime-fraud exception applies where the party attempting to circumvent the privilege can meet the following test: (1) a *prima facie* showing of fraud, and (2) the communications in question are in furtherance of the misconduct." *Id.* With regards to the second element of this test, "[w]here the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried

---

[1] This case was reassigned from Judge Marovich to Judge Feinerman in June 2015. (Dkt. 41.)

on substantially for the purpose of furthering the fraud." *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999).

The Court need not reach the first element of the crime-fraud exception standard articulated above, because Plaintiff's motion clearly fails under the second prong. According to the Plaintiff, the filing of the foreclosure case "violated the ICFA," and was "a direct result of Bank of America's and Wells Fargo's fraudulent mortgage servicing." (Dkt. 88 at ¶ 16.) "Indeed, according to [Plaintiff's] Complaint and [Second Amended Complaint], the Foreclosure Case was intended to *complete* the fraudulent scheme against [Plaintiff]." (*Id.* (emphasis in original).) In other words, Plaintiff argues that the very act of litigating the pending foreclosure action against him in state court is the act in furtherance of the fraud that he believes triggers the crime-fraud exception. As such, Plaintiff would have to show that the foreclosure action had "little or no legal or factual basis." *See Richard Roe*, 168 F.3d at 71. The Plaintiff has not provided any evidence that the foreclosure case is sham litigation with little or no legal or factual basis. In fact, it does not appear that Plaintiff disputes that his mortgage is in default because he failed to make payments, which would be a valid reason to initiate foreclosure litigation. Therefore, because the Court finds that Plaintiff has failed to provide any evidence that the foreclosure litigation is baseless, he cannot satisfy the second prong of the crime-fraud exception, and his motion to compel production of the documents in the privilege log is denied.

Plaintiff argues that the *Richard Roe* standard discussed above is not applicable to this case. According to Plaintiff, courts in the Seventh Circuit have limited the *Richard Roe* standard to cases where one party is engaging in "the separate tort of *abuse of process*." (Dkt. 95 at 10 (emphasis in original).) "In other words, whereas the Second Circuit requires the crime-fraud litigation to be legally or factually baseless in order for crime-fraud to apply to ongoing litigation

4

*at all*, courts in this jurisdiction recognize that the tort of abuse of process is one violation among many that can trigger the crime-fraud exception, but only in cases where the elements of the abuse of process tort have been met." (Dkt. 95 at 10-11 (emphasis in original).)  Even if Plaintiff is correct that courts in this circuit have only applied *Richard Roe* where the "elements of the abuse of process tort have been met,"[2] Plaintiff has failed to cite any case explicitly limiting the *Richard Roe* standard to abuse of process cases. Nor does this Court believe that such a limitation would be prudent.  *Richard Roe* recognized that a crime-fraud exception that allowed the very act of litigating to serve as the basis for applying the exception would lead to a significant weakening of the attorney-client privilege.  *See Richard Roe*, 168 F.3d at 71 ("Given that the attorney-client privilege and work product immunity play a critical role in our judicial system, the limited exceptions to them . . . should not be framed so broadly as to vitiate much of the protection they afford") (internal citations omitted).  In order to satisfy the Plaintiff's version of the crime-fraud exception, a party would simply need to plead sufficient facts to state a cause of action for fraud pursuant to Federal Rule of Civil Procedure 9, and include in the allegations that the opposing party was using litigation as part of the scheme to defraud.  If Plaintiff were correct, the crime-fraud exception would become so broad that it would swallow the privilege.  The *Richard Roe* decision recognized this danger, which is why that court articulated the heightened requirements where the very act of litigating is alleged as being the act in furtherance of a fraud.  The Court believes that the reasoning of the *Richard Roe* court is well founded, and

---

[2] The Court does not believe that Plaintiff's description of these cases is accurate.  For example, *Vardon Golf* did not involve the tort of abuse of process whatsoever.  In *Vardon Golf*, a jury in a patent infringement suit found that the plaintiff's sole shareholder had engaged in inequitable conduct before the United States Patent Office, and defendant sought discovery on the issue of inequitable conduct by the plaintiff corporation.  213 F.R.D. at 529.  The Court held that the crime-fraud exception did not apply, reasoning that inequitable conduct, without more, was not enough to satisfy the crime-fraud exception, and that the defendant had not shown that the plaintiff's patent infringement suit had little or no legal or factual basis.  *Id.* at 535-36.  *Vardon Golf* does not stand for the proposition that the *Richard Roe* reasoning applies "only in cases where the elements of the abuse of process tort have been met." (Dkt. 95 at 10-11.)

5

does not believe that the Plaintiff met that standard in this case, as discussed above. As such, the Court denies the motion to the extent it seeks an order compelling production based on the record currently before the Court.[3]

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel [88] is denied.

**ENTER:**

**DATED:** June 17, 2016

Susan E. Cox, U.S. Magistrate Judge

---

[3] Notably, Plaintiff has not requested that this Court engage in an *in camera* review of the documents, instead resting on the argument that Plaintiff has provided sufficient evidence to satisfy the crime-fraud exception. (Dkt. 88 at 12 ("[T]here is no need to hold *in camera* reviews in this case, and Kane's motion to compel should be granted.")) As such, the Court does not reach that issue in this opinion.