UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS H. KANE, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 8053 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BANK OF AMERICA, NATIONAL ASSOCIATION and WELLS FARGO BANK, N.A., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Thomas Kane alleges in this suit that Bank of America and Wells Fargo Bank (together, the "Banks") committed common law fraud and violated the Illinois Consumer Fraud Act ("ICFA") in connection with their processing and denial of his requests for a mortgage modification. Doc. 55. The Banks have moved the court to stay and abstain from hearing this case under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending resolution of earlier filed foreclosure proceedings in Illinois state court. Doc. 123. The motion is granted.

**Background**

In 2006, Kane took out a $470,000 loan from Wells Fargo and secured it with a mortgage on his home. Doc. 55 at ¶¶ 86, 88, 90. Wells Fargo transferred the mortgage to Bank of America, but continued to service it. *Id*. at ¶¶ 66-67. When Kane was laid off in 2009, he sought a loan modification. *Id*. at ¶¶ 92-93. Thus began a multi-year back-and-forth between Kane and the Banks over whether and how they might modify his repayment terms. *Id*. at ¶ 76. In the end, the Banks denied all of Kane's requests and proceeded with foreclosure. *Id*. at ¶ 85.

1

Litigation commenced on March 24, 2011, when Bank of America filed a foreclosure action against Kane in the Circuit Court of Cook County, Illinois. *Bank of Am., N.A. v. Kane*, No. 2011 CH 11338 (Cir. Ct. Cook Cnty., Ill.) (complaint reproduced at Doc. 124-1 at 6-40). Well over two years later, on November 9, 2013, Kane brought this suit against the Banks in federal court, alleging common law fraud and violations of the ICFA, the Racketeer and Corrupt Organizations Act ("RICO"), and the Fair Debt Collection Practices Act ("FDCPA"). Doc. 1. The gist of Kane's suit is that the Banks strung him along without intending to modify his loans and violated federal guidelines, in order to milk extra late fees and interest from him.

This case was originally assigned to Judge Marovich, who in August 2014 granted the Banks' motion to dismiss. Doc. 23 (reported at 2014 WL 4198295 (N.D. Ill. Aug. 25, 2014)). Kane then sought and, in June 2015, obtained permission from Judge Marovich to file an amended complaint that did not include the RICO claims, the FDCPA claims, and some of the originally pleaded fraud claims. Doc. 40 (reported at 2015 WL 3798142 (N.D. Ill. June 17, 2015)). The following day, the case was reassigned to the undersigned judge. Doc. 41. Kane then moved for reconsideration of Judge Marovich's rulings insofar as they precluded him from re-pleading his RICO claims. Doc. 44. The court denied that motion in September 2015, Doc. 54, and Kane filed a second amended complaint, Doc. 55, which the Banks answered in November 2015, Doc. 60. The court then urged the parties to get moving on discovery, which had only recently begun, and the parties engaged in unsuccessful settlement negotiations before Magistrate Judge Kim. Docs. 46, 61-68. The discovery deadline has been extended three times, most recently to November 18, 2016. Docs. 73, 87, 101, 119.

Meanwhile, on July 29, 2014, Kane in the foreclosure action asserted as affirmative defenses the same fraud-based theories underlying his claims in this federal suit. Doc. 124-1 at

55-122. Bank of America twice moved to strike those defenses, prompting Kane to amend twice more. *Id*. at 124; Doc. 124-2 at 2-113, 115, 117-183. Kane's third and final amended affirmative defenses sounded in common law promissory fraud and violations of the ICFA, closely tracking the allegations of his federal complaint. Doc. 124-2 at 117-183. The state court struck those defenses with prejudice on June 2, 2016, and then denied Kane's motion for reconsideration on October 5, 2016. *Id*. at 185, 187. On October 11, 2016, Bank of America moved for summary judgment in the foreclosure action, *id*. at 189, and after briefing and oral argument, the state court granted the motion on December 15, 2016, Doc. 133-1 at 5. The state court also issued a judgment for foreclosure and sale and appointed a sale officer to auction the property. *Id*. at 9-13, 15.

## Discussion

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and only if it would promote 'wise judicial administration.'" *Freed v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River*, 424 U.S. at 818); *see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (alteration in original) (citation omitted) (quoting *Colorado River*, 424 U.S. at 813, 817). In determining whether to abstain, the court's task is "not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the

3

clearest of justifications, that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (internal quotation marks and emphases omitted).

The *Colorado River* analysis has two steps. First, the court asks "whether the state and federal court actions are parallel." *Freed*, 756 F.3d at 1018; *see also Caminiti*, 962 F.2d at 700. If the proceedings are not parallel, *Colorado River* abstention must be denied. *Freed*, 756 F.3d at 1018. If the proceedings are parallel, the court then must weigh ten non-exclusive factors to determine whether abstention is proper. *Ibid.*

Kane concedes in his opposition brief that this federal suit and the state court foreclosure action are parallel. Doc. 128 at 13. This concession is a waiver. *See Mays v. BNSF Ry. Co.*, 974 F. Supp. 2d 1166, 1177-78 (N.D. Ill. 2013) (holding that the plaintiff "affirmatively waived" an argument by conceding the point).

The second step in the *Colorado River* analysis requires examining and balancing these ten non-exclusive factors:

1) whether the state has assumed jurisdiction over property;

2) the inconvenience of the federal forum;

3) the desirability of avoiding piecemeal litigation;

4) the order in which jurisdiction was obtained by the concurrent forums;

5) the source of governing law, state or federal;

6) the adequacy of state-court action to protect the federal plaintiff's rights;

7) the relative progress of state and federal proceedings;

8) the presence or absence of concurrent jurisdiction;

9) the availability of removal; and

10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. The court will address each factor in turn. *See Freed*, 756 F.3d at 1022 (noting that *Colorado River* requires adherence to "rigorous standards," which were met where the district court "carefully addressed each of the ten factors and provided sufficient explanations for its findings").

*1. Whether the State has assumed jurisdiction over property.* Because Bank of America initiated a foreclosure action in state court, the state court has assumed jurisdiction over the property at issue. *See Beal Bank USA v. Swift*, 2017 WL 372325, at *4 (N.D. Ill. Jan. 26, 2017). Kane concedes that this factor cuts against him. Doc. 128 at 13.

*2. The inconvenience of the federal forum.* Both the state court and the federal court are located in downtown Chicago, within a few blocks of one another, leading the parties to agree that neither forum is more convenient than the other. Doc. 124 at 14 n.2; Doc. 128 at 13. So this factor weighs against abstention. *See Freed v. Friedman*, 215 F. Supp. 3d 642, 655 (N.D. Ill. 2016) (holding that this factor weighed against abstention where the state and federal courts were located in Chicago); *Knight v. DJK Real Estate Grp., LLC*, 2016 WL 427614, at *6 (N.D. Ill. Feb. 4, 2016) (same, where the state court was elsewhere "within this court's geographical jurisdiction").

*3. The desirability of avoiding piecemeal litigation.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v. Union Mines Inc.*, 862 F.2d 652, 659 (7th Cir. 1988). As the Seventh Circuit has explained, duplicative litigation causes two potential problems:

> First, a party may try to accelerate or stall proceedings in one of the forums in order to ensure that the court most likely to rule in its favor will decide a particular issue first. Second, the possibility exists that one court, unaware that the other court has already ruled, will resolve an issue differently and create a conflict between the two forums. Thus, the results of simultaneous litigation of identical issues in the state and federal courts may be both unseemly and a grand waste of the efforts of the parties and the courts.

*LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989) (internal quotation marks and footnote omitted). With respect to the first problem, the horse has already left the barn—any dilatory conduct that allowed Bank of America to secure a favorable state court ruling before bringing this motion has already occurred. But due to the parallelism between this case and the state court foreclosure action, the second concern remains. *See Beal Bank*, 2017 WL 372325, at *4. If this court were to rule in Kane's favor on either or both of his common law fraud and ICFA claims, an "unseemly" conflict between the state and federal forums would result, given that the state court has already resolved those issues against Kane by dismissing his common law fraud and ICFA defenses and by ruling that Bank of America is entitled to foreclosure. *See Freed*, 756 F.3d at 1022 ("[I]f both state and federal proceedings were allowed to proceed, inconsistent rulings could jeopardize the appearance and actuality of justice."). This factor favors abstention, though it might have favored abstention even more strongly had the Banks not awaited the state court's decision before bringing this motion (more on this later).

*4. The order in which jurisdiction was obtained by the concurrent forums.* This factor favors abstention, as Bank of America filed the state action on March 24, 2011, and Kane did not file this suit until November 9, 2013, more than thirty-one months later. *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th Cir. 1985) (holding that the filing of a state case nearly five months before the parallel federal case commenced favored abstention). Kane contends otherwise, asserting that this factor concerns the order in which jurisdiction is obtained over the particular *claims* at issue. Doc. 128 at 14. If Kane were right, this factor would tip in

6

his favor, since he did not amend his affirmative defenses in the state foreclosure action to include his common law fraud and ICFA allegations until after he filed this suit.

But Kane is wrong. The precedents describing this factor speak in terms of when jurisdiction was obtained "by the concurrent *forums*," with no reference to or differentiation among particular claims. *Tyrer v. City of S. Beloit*, 456 F.3d 744, 754 (7th Cir. 2006) (emphasis added); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 (describing this factor as "[t]he order in which the concurrent tribunals obtained and exercised jurisdiction"). It therefore is not surprising that courts look to the filing date of the relevant suits when analyzing this factor, without any inquiry into when particular arguments, claims, or defenses were first asserted. *See Freed*, 756 F.3d at 1022; *Clark v. Lacy*, 376 F.3d 682, 688 (7th Cir. 2004) (discussing which of two parallel actions "was filed first"); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("In balancing this factor it is appropriate to note that Interstate filed both actions and chose to file in state court first."). That has been true even when the relevant claims were asserted as counterclaims. *See Freed*, 756 F.3d at 1020 (finding parallelism in part because the federal claims turned on "the precise subject of the counterclaims in the state court proceeding"). This approach makes perfect sense here, as Kane of course *could* have asserted his affirmative defenses earlier—as early as June 2011, when his original state court affirmative defenses were filed. Doc. 128 at 6-7. Waiting to amend those affirmative defenses until after he filed a virtually identical federal suit was Kane's choice, and a federal plaintiff's unilateral timing decisions should not tip the *Colorado River* balance in his favor. *See Freed*, 756 F.3d at 1020 (treating parties as substantially identical for parallelism purposes where "[t]he decision to exclude [a relevant party] from the original state court proceeding was entirely [the federal

7

plaintiff]'s choice"); *Beal Bank*, 2017 WL 372325, at *3 (collecting cases). This factor weighs in favor of abstention.

*5. The source of governing law, state or federal.* The source of the governing law here is state law, which favors abstention. *See Freed*, 756 F.3d at 1022 ("[A] state court's expertise in applying its own law favors a *Colorado River* stay."); *Day*, 862 F.2d at 660 (same). Kane concedes that this factor cuts against him. Doc. 128 at 13.

*6. The adequacy of state court action to protect the federal plaintiff's rights.* The state court is eminently competent to protect Kane's rights, which, as just noted, turn on state law. *See Ingall v. AES Corp.*, 311 F. App'x 911, 915 (7th Cir. 2008). Kane insists that the state court's rulings against him prove the state court's inadequacy because, in his view, those decisions were "contrary to established law." Doc. 128 at 17. But to entertain his argument would require re-litigating the merits of the state court's rulings—precisely the type of unseemly second-guessing that the *Colorado River* doctrine discourages. In any event, this court is "not *dismiss[ing]* [Kane]'s federal claims, but rather *stay[ing]* them pending the resolution of the state court proceeding." *Freed*, 756 F.3d at 1023. If, when the state court proceedings conclude, Kane believes the state court litigation has proved "inadequate," he will have a chance when the stay is lifted to argue here that the state court judgment should not be accorded preclusive effect. *Ibid.* This factor favors abstention.

*7. The relative progress of state and federal proceedings.* This factor requires the court to determine which case "appear[s] to be closer to a resolution." *Caminiti*, 962 F.2d at 702; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (holding that the federal case had progressed farther where "the parties had taken most of the steps necessary to a resolution of" the common

8

issue). In light of the state court's recent entry of summary judgment against Kane and accompanying preparations for sale of the property, this factor strongly favors the Banks.

Kane argues that, at the time the Banks filed their *Colorado River* motion, discovery had commenced in this case but not in state court, and that "usually the case that has commenced discovery is favored under *Colorado River*." Doc. 128 at 14. Even assuming that argument had merit at the time—and it probably did not, since despite the lack of discovery in state court, there was a pending summary judgment motion, *see Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011) ("The question whether the state litigation has reached an advanced stage turns not on the amount of discovery completed but on how far the state court has progressed toward a final resolution."); *U.S. Bank Nat'l Ass'n v. EMC-Lincolnshire, LLC*, 2003 WL 22048097, at *8 (N.D. Ill. Aug. 28, 2003) (holding that the state case had progressed further where "the state court [was] currently preparing to rule on summary judgment motions")—subsequent events have changed the landscape. Shortly after the briefing on this motion was completed, the state court granted summary judgment against Kane. Although the judgment of foreclosure that Bank of America obtained is not yet "final," *see HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 777 (7th Cir. 2015), the fact that the state foreclosure action has all but proceeded to judgment, while this case remains in discovery, means that the state court proceeding is significantly farther along for the purposes of this factor. *See Bozek v. Bank of Am., N.A.*, 2016 WL 6395509, at *4 (N.D. Ill. Oct. 28, 2016) (holding that this factor favored abstention where a "judgment of foreclosure ha[d] been entered" in the state case); *Alvarado v. U.S. Bank Nat'l Ass'n*, 2016 WL 3964051, at *5 (N.D. Ill. July 21, 2016) (holding that this factor favored abstention where the state court had granted summary judgment). Kane implicitly conceded, before it was known how the state court would rule, that a grant of summary judgment in state court would cause this

9

factor to tip against him. Doc. 128 at 15 ("There is no guarantee whatsoever that Bank of America's Motion for Summary Judgment [in the state foreclosure action] will be granted. If the Motion for Summary Judgment is denied, then the Foreclosure Case will remain behind the Federal Case … ."). This factor favors abstention.

*8. The presence or absence of concurrent jurisdiction.* All of Kane's surviving claims in federal court arise under Illinois law, and they are undoubtedly susceptible to litigation in Illinois court, so this factor favors abstention. *See Beal Bank*, 2017 WL 372325, at *5. Kane concedes that this factor cuts against him. Doc. 128 at 13.

*9. The availability of removal.* Kane concedes that this factor cuts against him. *Ibid*.

*10. The vexatious or contrived nature of the federal claims.* There is no need to comment adversely on Kane's motives to conclude that, because his federal court claims closely track his state court affirmative defenses, the federal suit is "vexatious" and "contrived" within the meaning of *Colorado River*. *See Freed*, 756 F.3d at 1024 (noting that this "factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding"); *Interstate Material Corp.*, 847 F.2d at 1289 ("[T]he federal suit could be considered both vexatious and contrived. Interstate filed both suits within seven months of each other seeking substantially the same relief from substantially the same parties. Without presuming Interstate's motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit."). This factor favors abstention.

In sum, nearly all of the *Colorado River* factors favor abstention. Ordinarily, that would end the inquiry into whether "exceptional circumstances" warrant abstention. As noted, however, the list of ten factors is a *non*-exclusive set of considerations, and here, an unusual circumstance requires further discussion: the fact that the Banks waited to bring this motion until

10

more than three years into this litigation. That is highly unusual for a *Colorado River* motion, which is much more commonly brought at the outset of a suit. *See*, *e.g.*, *Huon*, 657 F.3d at 644; *Lumen*, 780 F.2d at 693. The court has already taken this delay into account to the extent that it bears on the ten factors—specifically, the relative progress of the cases and the desirability of avoiding piecemeal litigation—but Kane asks the court to go one step further. Asserting something akin to laches, Kane contends that the Banks have brought this motion altogether too late. Because *Colorado River* and its progeny acknowledge a "virtually unflagging obligation" to exercise federal jurisdiction, he argues, the court should hold that a *Colorado River* motion may be brought only "at the *outset* of the case," or at the very least no later than the point at which the state and federal cases become parallel. Doc. 128 at 10-11.

Kane notes, correctly, that neither side has identified any prior case in which a *Colorado River* motion was brought so long after federal suit was filed, *id*. at 11-12, and the court's own research has not turned up any. But Kane similarly has identified no authority that supports his proposed timing rule. He argues that *Colorado River* abstention is a "jurisdiction[al]" issue, and thus one that the court must take up as early as possible. *Id*. at 10. There are two problems with that argument, both fatal. First, *Colorado River* abstention is not a doctrine that implicates the court's subject matter jurisdiction. *See Thomas-Wise v. Nat'l City Mortg. Co.*, 2015 WL 641770, at *2 (N.D. Ill. Feb. 13, 2015) (discussing this point). Second, even if *Colorado River* abstention implicated subject matter jurisdiction, that would cut against Kane, as a lack of subject matter jurisdiction can be raised at any stage of the proceedings, no matter how late in the game. *See Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008) ("[I]t has been the virtually universally accepted practice of the federal courts to permit any party to challenge or, indeed, to

11

raise *sua sponte* the subject-matter jurisdiction of the court at any time and at any stage of the proceedings.") (alteration in original).

So the court is left with this question, which appears to be one of first impression: when a federal court defendant allows a federal suit to proceed for over three years before bringing a *Colorado River* motion, does that delay preclude abstention? Such a rule might make sense if *Colorado River* stays existed solely (or even primarily) for the defendant's benefit; if so, the pros and cons of not bringing the motion earlier would be the defendant's alone to weigh, and the consequences of holding the defendant to that choice would fall primarily on its own shoulders. But the *Colorado River* doctrine first and foremost implicates judicial economy concerns, which primarily affect the court and the judicial system as a whole. *See Freed*, 756 F.3d at 1022 (noting that *Colorado River* is concerned with "the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority"); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011) ("The [*Colorado River*] prudential doctrine is a matter of judicial economy."); 17A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 4247 (3d ed. 2017) (noting that *Colorado River* abstention "may be regarded as abstention merely to serve the convenience of the federal courts"). In *Colorado River* itself, the Supreme Court explained that its decision "rest[ed] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817 (internal quotation marks and alteration omitted). The fact that the *Colorado River* doctrine was established primarily to benefit courts and avoid conflict between state and federal court decisions counsels strongly against adopting Kane's laches-like rule.

So, too, does the Supreme Court's admonition to apply *Colorado River* "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp.*,

12

460 U.S. at 21. In the court's experience, it is rare for a case to spend this long in federal court and still remain so far from the finish line, and much of the blame falls on Kane. His original complaint was 187 pages long and contained a whopping 1003 numbered paragraphs. Doc. 1. (The operative version still weighs in at 140 pages and 626 numbered paragraphs. Doc. 55.) That is far more than plaintiffs in even the most complex cases (which this is not) typically require, and Judge Marovich to had wade into Kane's voluminous pleadings when his unfounded RICO claims (among others) invited a motion to dismiss. Kane then dragged the pleading stage out further still when he attempted to revive those claims with an unsuccessful motion for reconsideration. And when the case was reassigned to the undersigned judge after more than a year and a half of litigation, discovery had not yet commenced. Doc. 43 at 3. Future plaintiffs who do not want to be on the receiving end of a successful *Colorado River* motion after three years of litigation will almost always be on much firmer footing, because their federal cases typically will have progress much farther.

To be sure, by playing two hands until they got cards they liked, the Banks likely engaged in some litigation gamesmanship. But that is not reason enough to disregard the guidance of precedent and forge ahead with a case that should otherwise be stayed. At the end of the day, Kane is asking this court to clutter its docket with "duplicative and wasteful litigation," *Caminiti*, 962 F.2d at 701, and to "jeopardize the appearance and actuality of justice," *Freed*, 756 F.3d at 1022, simply to rebuke the Banks for their tardiness. The court declines that request.

*Colorado River* should be implemented through a stay, not dismissal. *See Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004); *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-52 (7th Cir. 2002). Accordingly, this suit is stayed pending resolution of the state court proceedings, including any appeal. *See Hearne v. Bd. of Educ. of City of Chi.*,

185 F.3d 770, 778 (7th Cir. 1999) (holding that *Colorado River* abstention was appropriate where "proceedings in the state trial court have come to a close and further appellate review is possible"). When the state court proceedings conclude, any party may move this court to lift the stay and proceed with the federal suit in a manner consistent with the state court's rulings and any applicable preclusion principles. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995).

**Conclusion**

For the foregoing reasons, the motion to stay is granted. *Colorado River* abstention is warranted, and this case is stayed pending the resolution of the state court proceedings, including any appeals, in *Bank of America, National Association v. Kane*, No. 2011 CH 11338 (Cir. Ct. Cook Cnty., Ill.).

May 23, 2017

_____
United States District Judge