UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS H. KANE, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 8053 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BANK OF AMERICA, N.A., and WELLS FARGO BANK, N.A., | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Thomas Kane alleges in this suit that Bank of America and Wells Fargo Bank committed common law fraud and violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.*, in connection with their processing and denial of his requests for a mortgage modification. Doc. 55. The court stayed the suit under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending resolution of an earlier filed foreclosure case in Illinois state court. Docs. 144-145 (reported at 2017 WL 2243055 (N.D. Ill. May 23, 2017)). After the state case concluded, the Banks moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on the ground that the state judgment precludes Kane's claims here. Doc. 149. The motion is granted.

**Background**

As on a Rule 12(b)(6) motion, the court on a Rule 12(c) motion assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016); *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to

1

proper judicial notice," along with additional facts set forth in Kane's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Among the matters subject to proper judicial notice are state court filings and judicial decisions. *See Young-Smith v. Holt*, 575 F. App'x 680, 682 (7th Cir. 2014); *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006). The facts are set forth as favorably to Kane as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

In 2006, Kane took out a $470,000 loan from Wells Fargo and secured it with a mortgage on his home. Doc. 55 at ¶¶ 86, 90. Wells Fargo transferred the mortgage to Bank of America, but continued to service it. *Id*. at ¶¶ 66-67. Kane sought a loan modification in 2009. *Id*. at ¶¶ 92-93. Thus began a long back-and-forth between Kane and the Banks over whether and how they might modify his repayment terms. *Id*. at ¶ 76. In the end, the Banks denied all of Kane's requests and proceeded with foreclosure. *Id*. at ¶ 85.

Litigation commenced in March 2011, when Bank of America filed a foreclosure case against Kane in the Circuit Court of Cook County, Illinois. *Bank of Am., N.A. v. Kane*, No. 2011 CH 11338 (Cir. Ct. Cook Cnty., Ill.) (complaint reproduced at Doc. 124-1 at 6-40). Well over two years later, in November 2013, Kane brought this suit against the Banks in federal court, alleging common law fraud and violations of the ICFA, the Racketeer and Corrupt Organizations Act ("RICO"), and the Fair Debt Collection Practices Act ("FDCPA"). Doc. 1. The gist of

Kane's suit was and remains that the Banks strung him along without intending to modify his loans in order to milk extra late fees and interest from him.

This suit was initially assigned to Judge Marovich, who granted in part and denied in part the Banks' motion to dismiss. Doc. 23 (reported at 2014 WL 4198295 (N.D. Ill. Aug. 25, 2014)). Kane then sought and obtained permission to file an amended complaint that did not include the RICO claims, the FDCPA claims, and some of the originally pleaded fraud claims. Doc. 40 (reported at 2015 WL 3798142 (N.D. Ill. June 17, 2015)). The following day, the case was reassigned to the undersigned judge. Doc. 41. Kane then moved for reconsideration of Judge Marovich's rulings insofar as they precluded him from re-pleading his RICO claims. Doc. 44. The court denied that motion, Doc. 54, and Kane filed a second amended complaint, Doc. 55, which the Banks answered, Doc. 60. The court then urged the parties to get moving on discovery, which had only recently begun. Docs. 46, 61, 68.

Meanwhile, Kane in the state foreclosure case asserted as affirmative defenses the same fraud-based theories underlying his claims in federal court. Doc. 124-1 at 57-122. Bank of America twice moved to strike those defenses, prompting Kane to amend twice more. *Id*. at 124; Doc. 124-2 at 2-113, 115, 117-183. Kane's third and final amended affirmative defenses sounded in common law promissory fraud and violations of the ICFA, closely tracking the allegations of his federal complaint. Doc. 124-2 at 117-183. The state court struck those defenses with prejudice. *Id*. at 185, 187; Doc. 150-1.

Bank of America moved for summary judgment in the foreclosure case, Doc. 124-2 at 189, and the state court granted the motion, Doc. 133-1 at 5. The state court also issued a judgment for foreclosure and sale, and appointed a sale officer to auction the property. *Id*. at 9-13, 15; Doc. 150-3.

Following the entry of judgment, but before the judicial sale, Kane sold the mortgaged property and used the sale proceeds to pay off his loan. Doc. 153 at 7. On Bank of America's motion, the state court dismissed the suit with prejudice given that "all amounts due under the subject loan have been paid off in full." Doc. 150-4. No appeal was filed within the time permitted by Illinois law. *See* Ill. Sup. Ct. R. 303(a)(1) (appeals from final civil judgments must be filed "within 30 days after the entry of the final judgment appealed from").

## Discussion

The Banks contend that the state court's judgment in the foreclosure case precludes Kane's claims in this federal suit. The state court judgment's preclusive effect is governed by Illinois law. *See Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006). One variant of preclusion, res judicata or claim preclusion, "provides for the finality of rulings by barring the relitigation of claims or defenses that had been or could have been brought in a prior case." *Smith Tr. & Sav. Bank v. Young*, 727 N.E.2d 1042, 1045 (Ill. App. 2000); *see also Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007); *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 975 (Ill. 2012).

Res judicata applies under Illinois law if: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998); *see also Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 727-28 (7th Cir. 2014). In addition, the party against whom res judicata is invoked must have had a "full and fair" opportunity to litigate the claim in the prior suit. *Hicks*, 479 F.3d at 471. Kane concedes that the third requirement, an identity of the parties or their privies, is satisfied, and he does not dispute that he had a "full and fair" opportunity to litigate his claims in state

4

court. Doc. 153 at 8-9. The only disputes concern the first and second requirements, which are addressed in turn.

*Final Judgment on the Merits*. An order is final if it "either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Wilson*, 981 N.E.2d at 978. That an order resolves a "separate branch" of a suit, however, does not mean that it is immediately entitled to preclusive effect. Instead, to qualify as final for preclusion purposes, such an order must be "final *and* appealable." *In re Cochrane's Estate*, 391 N.E.2d 35, 36 (Ill. App. 1979) (emphasis added); *see also Shaw v. Bretz*, 2018 IL App (3d) 170291-U, ¶ 25 (Ill. App. Feb. 22, 2018) ("We must determine whether the April 24, 2015, order was a final and appealable order under Illinois Supreme Court Rule 304(b)(1) for purposes of the application of *res judicata*."); *City of Naperville v. Ill. Fraternal Order of Police, Labor Council, F.O.P. Lodge No. 42*, 997 N.E.2d 296, 299 (Ill. App. 2013) ("Dismissals that are entered without prejudice are not final and appealable orders. As such neither *res judicata* nor collateral estoppel barred the City from raising again its contention that the parties' dispute was not subject to arbitration.") (citations omitted); *People v. Taylor*, 286 N.E.2d 122, 123 (Ill. App. 1972) ("The denial of defendants' motion to dismiss the indictment was not a final and appealable order. It was an interlocutory order … . Res judicata does not apply to an interlocutory order.").

The "final and appealable" standard governing res judicata is akin to the standard used in Illinois to determine whether an appellate court has jurisdiction to review a trial court's order. *See Curtis v. Lofy*, 914 N.E.2d 248, 261 (Ill. App. 2009) ("The court disagrees that finality in the context of Rule 304(a)"—which permits a party to immediately appeal a final order regarding "fewer than all of the parties or claims" if the trial court makes an "express written finding that

5

there is no just reason for delaying either enforcement or appeal," Ill. Sup. Ct. R. 304(a)—"and *res judicata* differs. An examination of finality in the context of Rule 304(a) is the same as any other analysis of whether an order is final or nonfinal."). Indeed, both sides of this suit, as well as Illinois courts generally, treat as interchangeable finality for appeal purposes and finality for preclusion purposes. *See Wilson*, 981 N.E.2d at 978 (applying precedents addressing whether a trial court order is final for appeal purposes in assessing whether a summary judgment order "was a final judgment on the merits for purposes of *res judicata*"); *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986, 993 (Ill. App. 2009) (same); Doc. 153 at 10 (where Kane relies heavily on *EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152 (Ill. 2012), which addresses finality for appeal purposes, in arguing that the state court's foreclosure judgment is not final for res judicata purposes); Doc. 155 at 4 (where the Banks cite *EMC Mortgage* for the opposite proposition).

The question here, then, is whether the state court's foreclosure judgment is a "final and appealable" order for appeal purposes; if it is, then it also is final for preclusion purposes. The parties agree that a court's approval of a judicial sale, and not merely its judgment of foreclosure, ordinarily constitutes a "final judgment" in a foreclosure suit. Doc. 153 at 10; Doc. 155 at 8. This is so because, "[l]ike many states, Illinois protects mortgagors in foreclosure by giving them statutory periods of both redemption and reinstatement," which essentially permit a mortgagor to "undo [a] foreclosure" by paying certain sums to the mortgagee. *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 775-76 (7th Cir. 2015). Thus, "[i]n every case decided under Illinois law, entry of [a] foreclosure judgment marks the beginning of a period in which critical matters remain to be resolved: whether the mortgagor will exercise h[is] statutory redemption and reinstatement rights, and, should a judicial sale occur, whether it complies with all statutory requirements." *Ibid.*; *see also EMC Mortg. Corp.*, 982 N.E.2d at 481 (Karmeier, J., dissenting)

6

(describing proceedings between a judgment of foreclosure and an order approving sale of property).

That said, the Supreme Court of Illinois has held that although a foreclosure judgment "determines fewer than all the rights and liabilities in issue because the trial court has still to enter a subsequent order approving the foreclosure sale and directing distribution," it "*is* final as to the matters it adjudicates." *EMC Mortg. Corp.*, 982 N.E.2d at 154; *see also Santana v. Zipperstein*, 491 N.E.2d 1231, 1232-33 (Ill. App. 1986) ("A judgment of foreclosure of a mortgage is final."). Likewise, while a party ordinarily may not *immediately* appeal a foreclosure judgment, a foreclosure order can be rendered "final and appealable" in certain circumstances. For instance, if a trial court appends "language pursuant to [Illinois Supreme Court Rule] 304(a) … that there is no just reason for delaying enforcement or appeal" of a judgment of foreclosure, the mortgagor may immediately appeal. *JPMorgan Chase Bank v. Fankhauser*, 890 N.E.2d 592, 599 (Ill. App. 2008); *see also Dinerstein v. Evanston Athletic Clubs, Inc.*, 64 N.E. 3d 1132, 1140-41 (Ill. App. 2016) (noting that the "presence or absence of Rule 304(a) language speaks to the timing of when [an] order may be appealed, not to whether that order is 'final'"). Moreover, and as pertinent here, once a case has been voluntarily dismissed, terminating the suit in its entirety, "all orders which were final in nature but which were not previously appealable"—such as a foreclosure judgment—are rendered "immediately final and appealable." *Dubina v. Mesirow Realty Dev., Inc.*, 687 N.E.2d 871, 874-75 (Ill. App. 1997) ("It is well settled that final orders entered in a case become appealable following a voluntary dismissal."); *see also Kiefer v. Rust-Oleum Corp.*, 916 N.E.2d 22, 31 (Ill. App. 2009) (same).

Thus, at the time it was entered on December 15, 2016, the state court's judgment of foreclosure was not final and appealable because it lacked Rule 304(a) language and did not conclude the foreclosure suit. But once Bank of America voluntarily dismissed the foreclosure case because Kane paid off the loan, the judgment of foreclosure became final and appealable. And under the precedents cited above, because the state court's judgment of foreclosure is final for appeal purposes, it is a final judgment for res judicata purposes.

*Identity of Causes of Action*. To determine whether there is an identity of the causes of action between two proceedings, Illinois courts apply a "transactional test," under which "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 703 N.E.2d at 893; *see also Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558-59 (7th Cir. 2014). "Illinois does not require the same evidence or an identical theory of relief." *Cooney v. Rossiter*, 986 N.E.2d 618, 622 (Ill. 2012). Rather, what constitutes a "single group of operative facts" is "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *River Park*, 703 N.E.2d at 893 (internal quotation marks omitted); *see also Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 637-39 (7th Cir. 2004).

The Banks maintain that Kane has conceded that his claims in this case and the matters resolved by the state court arise out of the same group of operative facts. Doc. 155 at 3. Indeed, Kane acknowledges that "there is an identity of the causes of action in this case and his affirmative defenses in the foreclosure case." Doc. 153 at 7-8. Nor does Kane dispute that his claims against the Banks arise out of the same nucleus of facts that formed the basis for the

judgment of foreclosure. *See Firestone Fin. Corp v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."). That does not end the matter, however, for Kane argues that res judicata does not apply because prevailing on his claims in this case would not "nullify" the judgment of foreclosure. Doc. 153 at 18-20.

Illinois courts at times have noted that, because "counterclaims are generally permissive rather than mandatory," res judicata does not always bar a defendant from bringing a claim against a plaintiff "by way of a separate action" in lieu of bringing a counterclaim in the initial suit. *Fuller Family Holdings, LLC v. N. Tr. Co.*, 863 N.E.2d 743, 755-56 (Ill. App. 2007). The precise degree of leeway given defendants appears to be an open question. One view holds that the "question of whether *res judicata* bars bringing a permissive counterclaim in a separate action essentially collapses into the question of whether the second requirement of res judicata is met," *i.e.*, whether the two causes suits derive from a single group of operative facts. *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800, 806-07 (N.D. Ill. 2008). Another suggests that res judicata bars a defendant from bringing a new suit only if success in that suit "would nullify the initial judgment or would impair rights established in the initial action." *Carey v. Neal, Cortina & Assocs.*, 576 N.E.2d 220, 223-27 (Ill. App. 1991) (quoting Restatement Second of Judgments § 22 (1982)) (emphasis omitted); *see also Oshana v. FCL Builders, Inc.*, 994 N.E.2d 77, 87-88 (Ill. App. 2013) ("[A] defendant generally may raise his or her claim against the plaintiff by way of counterclaim or by way of a separate action. However, if the defendant's claim involves the same operative facts as the plaintiff's claim, *res judicata* may bar the defendant from raising his or her claim in a subsequent action. Specifically, *res judicata* bars a

subsequent action if successful prosecution of that action would in effect nullify the judgment entered in the initial action.").

There is no need to choose sides here. The principal justification for allowing a defendant, consistent with res judicata, to file a new suit in lieu of bringing a permissive counterclaim in the original suit—that a "defendant generally should not be forced to assert his claims in the plaintiff's forum or proceeding but should be free to bring a separate action" if he so wishes, *Carey*, 576 N.E.2d at 223—is inapplicable here. Kane did not just have the *option* of presenting positions in the state foreclosure suit that, by his own admission, are identical to his claims in federal court. Rather, he actually *did* so, via his affirmative defenses. *See JPMorgan Chase Bank, N.A. v. E.-W. Logistics, LLC*, 9 N.E.3d 104, 118-19 (Ill. App. 2014) (noting that counterclaims may be brought as affirmative defenses, and vice versa). Res judicata thus bars Kane's claims here so long as they arise out of the same group of operative facts as did his affirmative defenses in state court, which they do. Under these circumstances, there is no need to *also* find that a judgment in this case would nullify the state court's judgment of foreclosure. *See Dowrick v. Vill. of Downer's Grove*, 840 N.E.2d 785, 791 (Ill. App. 2005) (noting that "a defendant who may interpose a claim as a counterclaim, *but fails to do so*, is not thereby precluded from maintaining an action on that claim" unless doing so would "nullify the initial judgment") (emphasis added); *Carey*, 576 N.E.2d at 224 (same).

Finally, even if res judicata applied only if a judgment for Kane in this case would nullify the state court's judgment of foreclosure, that requirement would be met here. In *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986), the Seventh Circuit held that the federal plaintiffs/state court defendants were barred on preclusion grounds from bringing in federal court a RICO claim alleging that their mortgage was "procured through fraud [and] that the underlying

10

debt [at issue] was unlawful," reasoning that those claims would in effect nullify and "clearly undermine … judgments of foreclosure entered against [them] by the Illinois circuit court." 808 F.2d at 1235. This was so, the Seventh Circuit explained, because the federal plaintiffs were "seeking to relitigate a claim, namely the validity of … [a] mortgage, which has already been definitively resolved" in state court, and because, if they were permitted "to recover the damages they s[ought], the deficiency judgments awarded to [the state court plaintiffs/federal defendants] would be rendered meaningless." *Id*. at 1236. Similarly in *Whitaker v. Ameritech Corp.*, 129 F.3d 952 (7th Cir. 1997), the Seventh Circuit held that the federal plaintiff/state court defendant could not pursue in federal court a RICO claim alleging that the state court plaintiff/federal defendant had sent her fraudulent telephone bills with "misleading trade names and logos" and did not disclose the "true amount required to pay to avoid disconnection," because the federal defendant had obtained in state court a default judgment against the federal plaintiff for failing to pay those bills. 129 F.3d at 956-57. After all, the Seventh Circuit explained, "[a]llegations of fraud" relating to the "manner in which [the federal defendant] presented its monthly bills and disconnection notices" would "go to the heart of what was decided in the state court—that [the federal plaintiff] legitimately owes [the federal defendant] a sum of money." *Id*. at 957.

Under *Henry* and *Whitaker*, if Kane were to prevail in federal court on his claims—which, as the Banks rightly note, are "premised on allegations that [their] actions … caused him to be charged 'unnecessary interest charges and fees' and resulted in a foreclosure action that he contends was wrongful," Doc. 155 at 10—this court's decision would nullify the state court's ruling that, "by virtue of the mortgage and the affidavits presented as evidence of indebtedness, … [Bank of America established that it] ha[d] a valid and subsisting lien on [Kane's] property" *and* was owed particular sums for the loan's "[p]rincipal, [a]ccrued interest, [a]dvances and other

11

amounts," Doc. 150-3 at 1. It follows that the Banks would satisfy res judicata's identity of causes of action requirement even if they had to show that a victory for Kane here would nullify the state court judgment.

As all of the requirements of res judicata have been satisfied, the state court's judgment of foreclosure precludes Kane's claims in this case. While unnecessary to the court's holding, it bears mention that the opposite result would have unjustly rewarded Kane by allowing him to essentially buy his way out of the preclusive effect of the state foreclosure judgment by paying off his long-overdue mortgage only after he had definitively lost the state case.

## Conclusion

Defendants' motion for judgment on the pleadings is granted. Judgment will be entered in favor of the Banks and against Kane.

March 9, 2018

_____
United States District Judge

12